DAVIS & FARNHAM MFG. CO. *v.* E. K. DUNBAR, AND PEOPLE'S LIGHTING & POWER COMPANY, TRUSTEE.

May Term, 1908.

Present:  ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed July 30, 1908.

*Corporations—Contracts—Sale of Corporate Bonds—Construction—Waiver.*

A corporation issuing mortgage bonds to the amount of $75,000 to pay for the construction of a plant, contracted with a broker whereby

he agreed to sell at 90 per cent. of the face value, bonds to the amount of $75,000 "more or less," as might be required to meet the cost of the plant, and whereby he agreed to accept $75,000 "more or less" of the proposed issue of bonds as might be required for construction purposes, to pay for the same as ordered, and to accept and pay for, at the rate named, a sufficient amount to meet the requirements of the corporation for construction purposes, or otherwise to provide for the needs of the corporation for such purposes. *Held*, that the broker was not bound to pay cash for the bonds, and was bound to provide for the requirements of the corporation, and he was not obliged to sell the whole $75,000 of bonds, but only a sufficient amount for the construction of the plant, and on his furnishing material sufficient for construction purposes he complied with his agreement.

A broker contracted with a corporation to sell its mortgage bonds. He reported to the directors thereof that it was difficult to sell the bonds and that they might dispose of them. They did not release him from the contract, and he continued to have and to exercise the exclusive right of sale until the required amount was sold. *Held*, not to show a waiver of the contract, as matter of law.

A contract between the directors of a corporation individually and a broker recited that the broker had undertaken to finance the corporation, and that he had its bonds for sale, that he desired the directors individually to subscribe for and purchase $25,000 of bonds, and stated the amount that each of the directors would take, and stipulated that they were not to take their bonds until the broker had paid $25,000 for bonds subscribed for by him. *Held*, that the contract constituted a sale of $25,000 of the bonds by the broker to the directors individually, the broker agreeing to take the same amount.

ASSUMPSIT with trustee process. Heard on the report of a commissioner appointed to take the disclosure of the trustee, at the September Term, 1907, Washington County, *Waterman*, J., presiding. Judgment for plaintiff against the trustee for $10,074. The trustee excepted. The opinion states the case.

*Brown & Hopkins* for the trustee.

*John W. Gordon* for the plaintiff.

TYLER, J.  The only question that comes to this Court is for what amount the trustee should be held liable.

The commissioner reports that in the year 1904 the Peoples' Lighting and Power Co., trustee, caused mortgage bonds, secured on its franchise and property to be issued to the amount of $75,000 to pay for the construction of its plant in Barre.  It subsequently entered into a written contract with the defendant Dunbar, a broker, which provided that, "The Barre Co. will sell to Dunbar & Co. at 90 per cent. of the face value, as called upon by said Dunbar & Co., bonds to the amount of $75,000, more or less, as may be required to meet the cost of constructing and putting into operation the proposed plant.". * * * .  The defendant agreed to accept $75,000, more or less, of the proposed issue of bonds, as might be required for construction purposes, at 90 cents on the dollar, "to pay for the same as ordered, and to accept and pay for, at the rate named, a sufficient amount to meet the requirements of said Barre Co. for construction purposes, from month to month, or otherwise to provide for the needs of said Barre Co. for construction purposes from month to month."  He received the bonds at 90 cents on a dollar and was credited with them at 100.

The defendant also made a written agreement with Humphrey, Flynn and Howland, who were directors of the company, Flynn being president and Howland treasurer, and all actively engaged in promoting its interests.  The agreement was with them as individuals and was made and went into effect March 24, 1904, contemporaneously with the other contract.  By its terms the defendant agreed to subscribe for or procure satisfactory subscribers for $25,000 worth of the bonds at par, to be paid for by him, or by the subscribers, to the treasurer of the company.

Humphrey, Flynn and Howland subscribed respectively for $6,000, $6,000 and $13,000, it being stipulated that they were not to take their bonds or pay their subscriptions until the defendant had paid the $25,000 for the bonds subscribed for by him.

Soon after these agreements were executed and delivered the defendant began to make efforts to sell the bonds but did not find ready purchasers.  He made contracts with the plaintiff and others to furnish material for building the plant and laying pipes

to connect therewith, and made arrangements with the contracting parties by which they took bonds in payment for material furnished by them.

At some time between April 26 and July 25, 1904, a meeting of the trustees' directors and the defendant was held and the sale of the bonds was discussed, the defendant informing the directors that the bonds were looked upon with distrust and that he was not able to sell them; that they might take them and do what they pleased with them; that he could not do any more than he had done. The defendant had then furnished material for the plant to the amount of $25,000, and he thereafter continued to sell the bonds and to furnish material as it was required. The bonds were ready for delivery and first went into the hands of purchasers July 25, 1904, after which Humphrey and Flynn took and paid for at par the amounts for which they had respectively subscribed. Howland took his $13,000 at 90 per cent. All the bonds were taken under the written contract made with the defendant. In the autumn of 1904 these three subscribers took about $10,000 more of the bonds, and the plant was completed about the first of the following December, down to which time the defendant continued his efforts to sell bonds and furnish material.

It appears by the contract made by the defendant with the company that he was to accept as many of the bonds as were required for construction purposes—"$75,000, more or less." He was not bound to pay cash for them, but he was to provide for the requirements of the company, and, in accordance with the contract, he sold bonds and took material in payment therefor, to the amount, as the report shows, of $41,129.51. He was not obliged to sell the entire $75,000 of bonds, but a sufficient amount for the construction of the plant. He sold and furnished material sufficient for construction purposes. Although he at one time reported to the directors of the company that it was difficult to sell the bonds and that they might dispose of them, they did not release him from his contract, and he continued to have the exclusive right of sale and exercised that right until the required amount of material was furnished. The commissioner does not find a waiver of the contract, and no waiver appears as matter of law.

The second contract recites that the defendant had undertaken to finance the company, that he had its bonds in his hands for sale, and that he desired "the parties of the second part to subscribe for and purchase them to the amount of $25,000." It then states the amount that each party would take. The contract clearly constituted a sale of $25,000 of the bonds by the defendant to Humphrey, Flynn and Howland as individuals, the defendant agreeing to take the same amount.

*Upon the commissioner's report the judgment below was correct and is affirmed, with interest.*